IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER AQUILINE-SMITH, | : | CIVIL ACTION |
| Plaintiff | : | |
| V. | : | |
| | : | |
| UNITRIN DIRECT PROPERTY AND | : | NO. 10-3590 |
| CASUALTY COMPANY | : | |

## DEFENDANT'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

1.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments regarding the current address of plaintiff and strict proof thereof, if relevant, is demanded at the time of trial. Admitted that Jennifer Aquiline-Smith is an individual.

2.      Denied as stated. Defendant, Unitrin Direct Property and Casualty Company, has an office at One East Wacker Drive, Chicago, IL 60601.

3-5.    Admitted.

6.      Denied as stated. Admitted only that on or about April 19, 2006, plaintiff was involved in an automobile accident and received treatment for injuries alleged to have been caused by the accident.

7-8.    Admitted.

9.    Denied as stated. Admitted that plaintiff had medical expense coverage of $25,000 and wage loss benefits of $5,000. Plaintiff had underinsured motorist coverage of $25,000, but was extended coverage of $100,000 because defendant was unable to locate the sign down forms.

10.     Admitted that defendant was required to pay for reasonable and necessary treatment for injuries sustained by plaintiff in an automobile accident. Denied that all of the treatment that plaintiff received was reasonable and necessary. A Peer Review performed by Dr. Erick K. Holm, M.D., indicated that treatment rendered after 2007 by Dr. James Argires and Dr. Perry Argires was unreasonable and unnecessary. A copy of the Peer Review and Supplemental Peer Review are attached as Exhibits "A" and "B" respectively and incorporated herein by reference.

11.     Admitted only that plaintiff underwent surgery at Lancaster General Hospital on or about July 14, 2008.

12-13. Admitted.

14. Denied as stated. Defendant did not request a Peer Review from Dr. Eric Holm. A Peer Review was requested through Exam Coordinators Network who, in turn, requested that Dr. Eric Holm perform a Peer Review to determine the reasonableness and necessity of treatment provided by Dr. James Argires and Dr. Perry Argires. See Exhibits "A and B."

15.     Denied as stated. Dr. Holm found that a portion of the treatment plaintiff received from Dr. James Argires and Dr. Perry Argires was unreasonable and unnecessary based on the limited amount of documentation, insufficient history, and insufficient physical. See Exhibit "A."

16.     Denied as stated. Admitted that plaintiff sent correspondence to defendant on September 5, 2008 and December 8, 2008. The documents are writings and speak for themselves.

17.    Admitted.

18.    Admitted that plaintiff's counsel wrote correspondence to defendant dated
March 12, 2009.  Defendant is without knowledge or information sufficient to form a
belief as to the truth of the averments regarding plaintiff counsel's attempts to contact
defendant telephonically on February 23, 2009, February 27, 2009, March 4, 2009,
March 6, 2009 and March 12, 2009 and strict proof thereof, if relevant, is demanded at
the time of trial.

19.    Denied as stated.  The correspondence is a writing and speaks for itself.

20.    Denied as stated.  Admitted that defendant made an offer in the amount
indicated during the course of negotiation which was in addition to $25,000 which had
already been paid to plaintiff by defendant on January 8, 2009.

21.    Denied as stated.  On April 20, 2009, plaintiff's counsel made a counter-
demand of an additional $65,000.

22.    Denied as stated.  The correspondence is a writing and speaks for itself.

23.    Denied as stated.  The correspondence is a writing and speaks for itself.

24.    Denied as stated.  The correspondence is a writing and speaks for itself.

25.    Defendant is without knowledge or information sufficient to form a belief
as to the truth of the averments regarding plaintiff's claims that numerous calls and
messages were left to a representative of defendant and strict proof thereof, if relevant, is
demanded at the time of trial.

26.    Admitted in part, denied in part.  Admitted that plaintiff's counsel selected
an arbitrator.  Denied that defendant was "inactive" in attempting to resolve the claim.

27.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph and strict proof thereof, if relevant, is demanded at the time of trial

28.     Admitted with the explanation that the $50,000 was in addition to the $25,000 which had already been paid by defendant making the total sum $75,000.00

## DENIAL OF LOSS WAGE BENEFITS

29.     Admitted

30-31.   Denied. Defendant is without knowledge or information sufficient to form a belief as to the averments contained in these paragraphs and strict proof, if relevant, is demanded at the time of trial.

## COUNT I
### Breach of Contract

32.     Defendant incorporates by reference paragraphs 1 through 31 above in their entirety.

33-35.   Denied as stated. Plaintiff has wage loss benefits in the amount of $5,000 and medical payments benefits in the amount of $25,000 with defendant. However, plaintiff's claim is limited by the terms and conditions of the policy which is a contract, the terms and conditions of which speak for themselves.

36.     Denied that defendant breached its contractual obligations. As to the remaining factual averments, defendant is without knowledge insufficient to form a belief as to plaintiff's alleged damages and strict proof thereof, if relevant, is demanded at trial. The legal conclusions in this paragraph are denied.

**WHEREFORE**, defendant demands judgment in its favor, together with costs and attorneys fees.

**COUNT TWO**
**Damages Pursuant to 75 P.S. § 1716**

37.     Defendants incorporate by reference each and every answer to paragraphs 1 through 36 above in their entirety.

38.     Admitted only that correspondence was sent to plaintiff's counsel on August 25, 2008 and May 10, 2010 by defendant.  Defendant denies plaintiff's interpretation of the contents of said correspondence, as the documents are writing and speak for themselves.

39.     Denied as stated.  The Peer Review speaks for itself.

40.     Denied as a conclusion of law.

41.     Denied.  The legal conclusions in this paragraph are denied.  Defendant is without knowledge or information sufficient to form a belief as to the truth of any factual averments contained in this paragraph and strict proof thereof, if relevant, is demanded at the time of trial.

**WHEREFORE**, defendant demands judgment in its favor, together with such costs and attorneys fees.

**COUNT THREE**
**Damages Pursuant to 75 P.S. § 1797**

42.     Defendants incorporate by reference each and every answer to paragraphs 1 through 41 above in their entirety.

43.     Denied.  It is denied that defendant used the Peer Review process in an

unlawful manner to determine causation. The Peer Review is a writing and speaks for itself. The legal conclusions in this paragraph are denied.

**WHEREFORE**, defendant demands judgment in its favor, together with such other relief as the Court may deem appropriate.

**COUNT FOUR**
**Bad Faith Pursuant to 42 P.S. § 8371**

44.    Defendant incorporates by reference paragraphs 1 through 43 above in their entirety.

45-47.   Denied. The legal conclusions in these paragraphs are denied. Defendant is without knowledge or information sufficient to form a belief as to the truth of any factual averments contained in these paragraphs and strict proof thereof, if relevant, is demanded at the time of trial.

**WHEREFORE**, defendant demands judgment in its favor, together with such other relief as the Court may deem appropriate.

**FIRST AFFIRMATIVE DEFENSE**

48.    Plaintiff's claims may be barred in whole or in part by the Provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") and any amendments effectuated to that law by Act 6.

**SECOND AFFIRMATIVE DEFENSE**

49.    Plaintiff's claim may be barred in whole or in part by the provisions of the applicable Unitrin Direct insurance policy.

## THIRD AFFIRMATIVE DEFENSE

50.    According to the terms of the applicable insurance policy, under no circumstances can plaintiff recover more than the underinsured motorist limits set forth in her insurance policy with Unitrin Direct.

## FOURTH AFFIRMATIVE DEFENSE

51.    Plaintiff's Complaint states claims for payment of benefits for which plaintiff has not submitted reasonable proof of the amounts of same.

## FIFTH AFFIRMATIVE DEFENSE

52.    At all times relevant hereto, defendant was acting in good faith and with reasonable cause in the investigation of plaintiff's claim for benefits and the denial of same.

## SIXTH AFFIRMATIVE DEFENSE

53.    Upon information and belief, the treatment at issue which was allegedly provided to the plaintiff was not reasonable or necessary and is not compensable under the MVFRL.

WHEREFORE, Unitrin Direct demands judgment dismissing plaintiff's

Complaint together with the costs of suit and attorneys' fees.

Joseph M. Hankins
Mary G. McCarthy
Britt, Hankins & Moughan
Suite 515 Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Philadelphia, PA  19102-1888
(215) 569-6904; (215) 569-6918;
E-mail: jhankins@britthankins.com
          mmccarthy@britthankins.com
          Attorneys for Defendant,
          Unitrin Direct Property and Casualty
          Company

# EXHIBIT A

Apr 09 08 01:20p                                                                                    p.2



**BERKS**
**NEUROSURGERY**
**ASSOCIATES**
**LTD.**

ERIC K. HOLM, M.D., F.A.C.S.

606 MUSEUM ROAD
READING, PA 19611-1427

(610) 373-4007
FAX (610) 374-1412

April 9, 2008

Exam Coordinators Network
2061 N.W. Boca Raton Blvd.
Suite 207
Boca Raton, FL 33431

Re: Jennifer Aquiline
Claim No.: 2006012278
BCN #: 200803060077
Date of MVA: 4/19/06

Dear Sirs:

I am in receipt of the records you asked me to review and perform a Peer Review upon. Please note that in reviewing the records, I have rearranged their order and hopefully this is not offensive to anyone.

The first portion of the records consists of 63 pages of material that appear to come from the office of Dr. James P. Argires. It should be noted that these notes from Dr. Argires cover the years 2006, 2007 and 2008, and during that time frame, Dr. Argires appears to have changed office locations. It would appear that Dr. James Argires saw Ms. Aquiline first on 9/11/06 at the request of Dr. Nguyen of Leola Family Health Center. Dr. Argires reviewed a history that Ms. Aquiline was a 30 year old female who had been involved in a motor vehicle accident on or about 4/19, year unspecified. She was a driver wearing a seatbelt involved in a motor vehicle accident and at the impact, experienced significant pain across the mid-cervical region as well as left scapula region into the shoulder and had been undergoing conservative treatment. An MRI of the shoulder as well as the cervical spine had been performed and she was seeing Dr. Argires because of persistent discomfort. There were no other joint complaints, no weight loss, no bowel or bladder disturbance and no aggravation with coughing or sneezing. There were paresthesias in the ulnar distribution, side undetermined, as well as some mild suboccipital headaches. The past history was significant for migraine, knee surgery in 2003 side not specified, and a review of systems indicating a number of complaints. It noted the smoking of a half a pack of cigarettes per day and the social intake of alcohol. The general physical examination was satisfactory. Neurologic examination appears to have exhibited no cranial nerve defects. Cerebellar testing was considered satisfactory. There was no motor or sensory deficit. Gait was considered satisfactory and there was an equivocal Sperling's maneuver on the left side while there was noted to be some cervical muscle spasm. Dr. Argires thought there might be an acute cervical disc problem. It would appear he did not review a cervical MRI scan or the shoulder MRI scan as there is no documentation of that occurring with this office visit. He did note however that he was not convinced she would need surgery but rather needed intensive outpatient treatment. When seen in follow up on 9/26, the headache pattern continued. He reviewed the MRI and noted there was a cyst in the sinus but made no other comments as to abnormalities. When seen in follow up on 10/23/06, there were notations that physical therapy was improving things, she was taking medication (type undetermined), and requested to continue treatment. In January of 2007, she complained of continued neck pain and also developed some lower back pain, etiology undetermined. She was utilizing an anti-inflammatory agent (Lodine) and a muscle relaxant (Skelaxin), and these afforded some relief at that time (1/11/07). Dr. Argires recommended seeing Dr. Sterenfeld for possible injection therapy. This is followed by a note dated 1/12/07 from the office visit with Dr. Sterenfeld. He did review her history in more detail and noted complaints of right cervical pain referred to the right shoulder and upper arm. There were associated paresthesias into the fourth and fifth digits of the right hand and similar feelings in the left hand with daily headaches. It noted there were questions regarding an injury to the head as Ms. Aquiline was dazed after the accident. It noted treatment from a chiropractor for low back symptoms and then the development of neck pain. It noted aggravation of the symptoms with traction,

Page 2
Re: Jennifer Aquiline
Claim No.: 2006012278
ECN #: 200803060077
Date of MVA: 4/19/06

temporary relief from massage therapy, difficulties in turning her head, and a significant review of systems. There was also a history of chronic sinusitis, headaches, and knee surgery. It also noted that Ms. Aquiline was exercising on a regular basis doing aerobic exercises and yoga. Dr. Sterenfeld's examination noted a full range of neck motion but right sided neck pain with that. In addition, there was tenderness to palpation. Rotator cuff testing was satisfactory and Dr. Sterenfeld's cranial nerve examination was intact. Her reflexes were normal. Pin sensation showed non-specific changes in the right upper extremity and muscle strength testing was normal as well. Dr. Sterenfeld reviewed a cervical MRI scan which showed a disc bulge at C5-6 on the right side and a bulge at C6-7 on the left side and discussed getting a bone scan and consideration for facet injections and/or epidural injections. A follow up note by Dr. Argires dated 1/26/07 noted a lumbar spine study that supposedly showed degenerative changes and possible nerve root compression at L5-S1, side not determined. It also noted there was a conjoined nerve root at that level as well.

In follow up with Dr. Sterenfeld, he discussed at length the use of epidural injections and Ms. Aquiline declined and she proceeded with a low back evaluation. A telephone note indicated a 75% to 80% improvement when recorded on 3/20/07. The evaluation by Dr. Sterenfeld of Ms. Aquiline's low back again reviewed her accident, again reviewed her complaints, again did not find any abnormalities on examination, and he felt that her symptoms were due to the accident but should improve, if I understand things correctly. She did at that time (2/27/07) get a trochanteric bursa injection on the right side. On 8/27/07, there is another telephone note indicating that Ms. Aquiline wanted to proceed with the epidural steroid injection and she was seen by Dr. Sterenfeld on or about 8/31/07. At that time, she was complaining of right upper extremity shoulder pain with aching on the left side, and Dr. Sterenfeld again reviewed things with her and discussed doing the block and even possibly using acupuncture, myofascial release, biofeedback and chiropractic therapy, and she appears to have gone ahead with the epidural steroid block. There are no notations regarding that being done however.

Ms. Aquiline then returned to see Dr. Argires on or about 2/4/08. He noted she had been doing well but developed recurrent leg pain from some etiology not determined and suggested a repeat MRI scan. When she returned in follow up in March of 2008, she was again noted to have the degenerative changes at L5-S1 with changes suggestive of an annular tear noting that she might be progressing as the result of her motor vehicle accident and recommended that she see Dr. Percy Argires for a microdiscectomy.

There are then a number of radiological reports. The first is a lumbar spine x-ray as well as x-rays of the pelvis and hip done on 12/12/06. This shows mild narrowing at the L5-S1 disc space with a mild scoliosis as well as views of the pelvis and hip which showed no evidence of fracture. There is then the report of a lumbar MRI done on 1/17/07. It notes the motor vehicle accident on or about 4/19/06 and compares the MRI study to the plain x-rays. The first 4 disc spaces are considered normal at L1-2, L2-3, L3-4 and L4-5. At L5-S1 there is noted disc space narrowing, disc bulging, and also a conjoined nerve root, but there is no noted herniated disc. A cervical spine x-ray and shoulder x-ray done on 8/14/06 show no evidence of fracture, straightening of the cervical spine in the neck and no evidence of fracture in the shoulder. A chest MRI, cervical spine MRI, and left shoulder MRI appear to have been done on 8/22/06. It talks about small disc bulging at C5-6 and C6-7 without compressing the spinal cord. It talks about a normal MRI of the left shoulder and scapula. An MRI report of the right hand done on 4/19/07 showed no fracture, possible tendonopathy, and a comparison was made with a study done in April of 2007. This apparently was done for swelling following a punching injury. There is then an MRI report of the right knee done on 4/21/06. It notes the motor vehicle accident. It notes the previous meniscal surgery in March of 2003. It notes a normal appearing right knee. There is then an MRI report done on 9/11/06. This is reported as unremarkable. It notes a cyst in the sinus. There is then a bone imaging with Spect studies done on 1/24/07 and this shows no significant abnormalities as well.

There are then a number of records from The Rehab Center where apparently Ms. Aquiline was seen 3 times per week for at least a couple of weeks at the request of Dr. Argires sometime in 2006. She was seen at least on 9/13/06 because of a cervical disc syndrome. It noted the history. It noted the complaints of neck pain. It noted she was treated by family physicians from apparently April to September before she saw Dr. Argires and then she had her cervical, brain and knee MRI scans done. The primary complaint when initially evaluated by the physical therapist was that of neck pain on the left side with headaches, paresthesias into the hand on the left side, and no reports of any back or lower extremity pain. A therapy plan was outlined and goals stated and then there are a

Page 3
Re: Jennifer Aquiline
Claim No.: 2006012278
ECN #: 200803060077
Date of MVA: 4/19/06

number of pages surrounding Ms. Aquiline getting therapy and bills associated with that. It notes ongoing complaints of neck pain, stiffness, and then some mild improvement. It does note increased symptoms with some of the exercises. There is no mention of any low back complaints in the multiple visits to the therapist which extended at least until 10/26/06. There are then a number of HCFA forms surrounding visits with Dr. Argires, etc.

There are then 15 pages of material that appear to come from a chiropractor's office. From the attached HCFA forms, it appears to come from Paul J. Newhart, DC. There are progress notes indicating Ms. Aquiline was seen on 4/26/06, 4/28/06, 5/25/06, 7/18/06, 7/19/06, 7/28/06, 8/3/06, and 12/12/06. The initial recorded visit indicates moderate pain in the right lumbar region, low back pain with bending as well as neck pain. It notes she was in her motor vehicle accident on 4/19/06 but does not seem to indicate any treatment prior to that. The chiropractic therapy was reportedly done with the purpose of improving things. Two days later, the discomfort was considered increased in severity especially on the right side and into the right leg, aggravated by bending and sitting and there were also more complaints of neck pain. Chiropractic therapy was again done to try and relieve things. By 5/25/06, the pain had been reduced in severity in the low back and there was also improvement in the neck region. In addition, Ms. Aquiline was complaining of forehead pain. Therapy was continued and by 7/18/06, there was continued improvement in the back pain suggesting she had responded fairly well. However by 7/19/06, the pain was noted to be persistent. By 7/28, the chiropractic notes indicate reduction in severity of the pain and some stability while there were ongoing left shoulder and arm pain complaints. By 8/3/06, there was left scapular and shoulder pain, but on examination VTN whoever that was did not show any major abnormalities and noted discomfort with shoulder movement. By 12/12/06, VTN noted ongoing chronic pain, a referral to Dr. Argires, flare ups of back pain with walking and being on her feet. The examination at that time was satisfactory and the recommendations were to continue with the neuro specialist.

The next portion of the records consists of 16 pages of material from Hartz Physical Therapy in Lititz, PA. These include some type of form indicating possible pharmacy prescriptions received. It also includes letters to Dr. Argires from Hartz Physical Therapy dated 2/6/07 indicating Ms. Aquiline was seen there for the first time regarding an L5-S1 disc problem and right leg radiculopathy. It noted significant increase for 2 months prior to this visit (January of 2007?) and restrictions in activities of daily living. The physical therapist's evaluation showed possible weakness and a program was outlined. The handwritten progress notes at times are difficult to interpret but seem to indicate that symptoms moved from the right side to the left, the use of epidural steroids, and a note dated 3/21/07 indicating Ms. Aquiline had 4 visits and she seemed to improve because of significant decrease in symptoms.

There is then a medication profile page indicating prescriptions for Esgic Plus, Darvocet N-100, Soma, Lodine, Acyclovir, Allegra D, and Skelaxin. These appear to cover a time frame from 9/11/06 to 1/11/07. These prescriptions appear to have been ordered by Dr. James Argires.

There are then approximately 85 pages of material that seem to come from Leola Family Health Center in Leola, PA. These pages consists of reports from numerous physicians including Dr. Argires' records which I had previously reviewed. It appears Ms. Aquiline was first seen there as far back as 3/30/05. However, the office notes do not seem to start until 4/21/06. That involves the motor vehicle accident that occurred at an unspecified date. It noted that Ms. Aquiline was in a motor vehicle accident, struck in the rear as cars piled up behind her when she had to suddenly stop. Ms. Aquiline was most concerned about right knee pain and her left paraspinous musculature. Her exam by LJD did not reveal any neurologic abnormalities as there were intact reflexes, adequate strength, no spinal tenderness but paraspinous muscle tenderness and she had a little bit of stiffness on range of motion testing. The knee was felt to be satisfactory and it was felt she had right knee pain, left shoulder pain, a mild concussion and was going to be placed on Advil, muscle relaxants and followed. An MRI scan of the knee was obtained. There is then a copy of a phone message note questioning what was going on dated 8/1/06 which is 4 months later. A dictated office note at that time indicates left scapular and shoulder pain, chiropractic therapy, a satisfactory examination, and problems concerning neck pain, left shoulder pain, left scapular pain and headaches with no mention of back pain. By the end of August of 2006, there are complaints of headache, breast enlargement, weight gain, etc. and it was felt there might be a pituitary tumor and because of such, a brain MRI was obtained as well as blood work. In September of 2006, the headaches persisted and it was noted she was going to be seeing

Page 4
Re: Jennifer Aquiline
Claim No.: 2006012278
ECN #: 200803060077
Date of MVA: 4/19/06

a neurosurgeon. Again, there were no complaints of back or lower extremity pain. In early December in follow up there was ongoing neck pain complaints, low back and right hip pain and an x-ray was taken of the right hip and lumbar spine which were considered normal except for the suggestion of constipation on the abdominal plain x-rays. There were then phone calls in January and February of 2007 because of the need to get x-rays, decongestion and sinus pressure and headaches. At the end of March of 2007, it noted an injury to her hand side not specified, and then a subsequent MRI scan of the hand because of swelling. In June of 2007 there were complaints of an upper respiratory problem with a cold and sore throat and the notation that there had been ongoing 15 years of smoking. In October of 2007, she developed face pain of a month's duration and had a teeth grinding problem. In January of 2008, she presented with a cough of at least 6 week's duration. There were again, no complaints of back pain. Approximately a week later, she was questioning possible endocrinologic problems as well as sinus problems.

There is also a single letter from a Teri McGillis, MD, a dermatologist, surrounding a mole removed from her chest. There is a note by Karen Roberts, MD who was apparently a gynecologist that saw Ms. Aquiline on or about 7/26/07. It noted engagement at that time, the possible need for Valtrex and a stable gynecological examination with, again, no complaints of back pain.

There are then letters from the Hershey Medical Center where Ms. Aquiline was seen on or about 3/13/07. This appears to be from the Department of Medicine Endocrinology. It discusses the evaluation and obtaining of lab data. It does state in that report that there is a past history of bulging discs in the neck and lower back on that appointment date of 3/13/07. There was a gynecological evaluation on or about 7/25/06, again by Dr. Roberts. This was for a possible vaginal infection and appropriate studies were obtained. There is a single page with minimal information dated 4/19/06 indicating Ms. Aquiline was seen with an admitting diagnosis of motor vehicle accident evaluation and discharged. She apparently arrived at approximately 18:56 and was discharged at 20:25. That to me means almost 7:00 and going home at 8:30. There is no other information attached to that single page.

There are then a number of lab reports regarding various tests mentioned by various doctors and pathology specimens. There are also copies of the previously reviewed x-rays as I noted. There are also further copies of Hartz Physical Therapy notes and even letters from attorneys requesting copies of medical records and bills from 9/7/06 to present. There are also copies of the notes from Dr. Argires and also Dr. Sterenfeld. There are also a number of HCFA forms.

With regards to the questions as proposed in your letter, you question the reasonableness and necessity of treatment rendered by Dr. James Argires. His initial treatment and subsequent treatment towards the end of 2006 and into 2007 seems reasonable and necessary and does seem and appear to be related to the motor vehicle accident since Ms. Aquiline did not respond to conservative treatment by her family physicians or emergency rooms, etc.

You question the reasonableness and necessity of further treatment by Dr. Argires and I presume you mean James Argires, MD and not his son Perry Argires, MD. As noted in the review of records, when last seen in January of 2008, Dr. Argires mentioned improvement with conservative treatment for discogenic issues, but now recurrent pain. He supposedly repeated an MRI study but I have no copy of that report. He noted that there were apparently more protrusion of the disc even though I do not have a confirmatory MRI study for personal review of those studies and thought it might be of value to have her see his son, Dr. Perry Argires, for a possible microdiscectomy. As far as further treatment in the form of surgery, I do not see any indication for that based on the records I reviewed and the material I reviewed.

You question the reasonableness and necessity of any and all referrals made by Dr. Argires, and those do seem reasonable and necessary as far as 2006 and 2007. However, the treatment beyond 2007 by Dr. James Argires and/or Dr. Perry Argires does not seem reasonable or necessary based on the limited amount of documentation as well as no adequate history and physical to review. Ms. Aquiline seems to have minimal pain complaints regarding her back and leg that did not seem to start until several months after the accident, and then it seemed to disappear only to come back for no apparent reason. That is certainly possible but is not an indication for surgery and does demand progressive, aggressive conservative treatment rather than just simply operating for no apparent reason.

Page 5
Re: Jennifer Aquiline
Claim No.: 2006012278
ECN #: 200803060077
Date of MVA: 4/19/06

I hope the above information is adequate for you and everyone concerned.  Should there be further questions, I would be more than happy to answer them.

Sincerely yours,

Eric K. Holm, MD, FACS

EKH.dlf

Claimant Name:    Jennifer Aquiline

Physician Name:   Eric K. Holm, M.D.

ECN #:            200803060077

CLAIM #:          2006012278


I hereby certify that the information contained in this report was prepared by
and is the work product of the undersigned, and is true to the best of my
knowledge and information.

_____
Signature of Physician

Medical License #_____

# EXHIBIT B

**BERKS
NEUROSURGERY
ASSOCIATES
LTD.**

ERIC K. HOLM, M.D., F.A.C.S.

606 MUSEUM ROAD
READING, PA 19611-1427

(610) 373-4007
FAX (610) 374-1412

May 21, 2008

Adam Stephens
Exam Coordinators Network
123 N.W. 13th Street
Suite 207
Boca Raton, FL 33432

Re: Jennifer Aquiline
Claim No.: 2006012278
ECN#: 200803060077
Date of MVA: 4/19/06

Dear Mr. Stephens:

I have reviewed the lumbar MRI report of 2/28/08 on Jennifer Aquiline.  I did review the office note of Dr. James Argires noting he feels that she still has degenerative disease involving her bottom disc space and that there was more protrusion.  He also noted that he thought there might be an annular tear.

The radiologists note the annular tear with disc bulging but do not feel it has worsened.  Specifically they do not note any distortion of the thecal sac or S1 nerve roots.  That means there is no compression of the dura, no compression of nerve roots; therefore there is no significant disc protrusion, herniation or whatever else you want to call it.  It is not bad.  There is not a surgical lesion involving her spine in my opinion.

Microdiscectomies are done, at least with my training experience and all of the meetings I have gone to, when there is a disc herniation.  There are no reported disc herniations by the radiologists or Dr. Argires' reports.  Likewise, there is just degenerative disc disease.  A very nice study from the State of Washington indicated that in the presence of degenerative disc disease, aggressive surgery on the lumbosacral junction, i.e. L5-S1, was not indicated because it did not benefit people.

As noted in my original report of 4/9/08, Ms. Aquiline did not start complaining of low back problems until approximately 6 months after her motor vehicle accident, i.e. January of 2007.  Likewise, the changes noted on the MRI scan are consistent with progressive age related degenerative changes ongoing in Ms. Aquiline's spine and I see no reason to recommend, consider or even think about surgical treatment based on the documentation I received.

I hope this information is adequate for you.

Sincerely yours,

Eric K. Holm, MD, FACS

EKH.dlf